**UNITED STATES of America**

v.

**Andres ROMAN, Defendant.**

**No. 73 Cr. 977.**

United States District Court,
S. D. New York.

May 30, 1975.

Paul J. Curran, U. S. Atty., for United States of America; T. Gorman Reilly, Asst. U. S. Atty., of counsel.

Larry S. Greenberg, New York City, for defendant.

OPINION

KEVIN THOMAS DUFFY, District Judge.

The defendant, Andres Roman, was indicted, 73 Cr. 977, and charged in one count with possession with intent to distribute narcotic drug controlled substances, 21 U.S.C. §§ 812, 841(a)(1) & 841(b)(1). Roman waived a jury and I began the trial on November 11, 1974. Although there has been no request under Rule 23(c) F.R.Cr.P. that I find the facts specifically, I believe it is only fair to set forth the evidence upon which I base my decision.

On the morning the trial commenced, the defendant moved to dismiss the indictment on the grounds that, in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the government had failed to turn over to the defense material that might possibly be exculpatory. The material the defendant sought was post-arrest, pre-arraignment statements that may have been made by the defendants in a closely related case, 73 Cr. 981, specifically Domingo Rosario, Ignacia Rosario and Carolyn Baxter.

In response to this *Brady* motion the government asserted that it did not have any exculpatory statements in its possession. However, the government did admit that the particular statements the defendant sought are those which would ordinarily appear on Form No. USA 33–S–306, which is a U. S. Attorney's pre-arraignment form, and that for the three defendants in 73 Cr. 981 and for the defendant in this case, these forms could not be found despite three separate attempts to locate them.

I decided that a hearing would be necessary to determine whether any statements had been made and, if they had, why they were now apparently missing. Because the witnesses necessary for such a hearing were not immediately available, I proceeded with the trial and reserved any decision until after a *Brady* hearing could be scheduled. That hearing was set for December 2, 1974, and since the apparent disappearance of the allegedly exculpatory statements involved not only the defendant in this case but also the defendants in the related case referred to above, 73 Cr. 981, the hearing was a joint hearing and attorneys for the defendants in both cases were present.

The evidence introduced at this hearing established that Andres Roman, Domingo Rosario and Ignacia Rosario were arrested on June 14, 1973. The investigations leading to their arrest had been conducted by the New York Drug Enforcement Task Force, and, therefore, after their arrests they were taken to the Task Force headquarters at 201 Varick Street for processing. Harold Rodell, the Task Force Group Supervisor in charge of these cases, testified that neither during the processing period nor at any later time did he, or as far as he

knew, any member of his staff, take any written statements from any of these defendants.

Rodell further testified that on the date these defendants were processed, two attorneys were assigned to work with his Task Force office, Dan Pykett and Vincent Promuto, and that in the usual course each defendant would have been interviewed by one of those attorneys prior to arraignment. During this interview, the Task Force attorney would, under standard procedures, complete Form No. USA 33–S–306 entitled "Statement of Defendant Before Arraignment Made to an Assistant United States Attorney" (hereinafter "Form 306"). Rodell did not know which Task Force Attorney, Pykett or Promuto, interviewed these defendants and he stated that a search of all the files in the office failed to uncover any pertinent Form 306s.

The second witness called at the hearing was Lawrence Mason, who at the relevant time was the Administrative Assistant to Andrew J. Maloney, the then Regional Director of the Office for Drug Abuse Law Enforcement ("ODALE"). Mr. Mason testified that starting in May of 1973 and for approximately four months thereafter, Vincent Promuto was employed by ODALE and was assigned to work with the Task Force at its 201 Varick Street office. Mr. Mason then stated that during the week preceding the hearing both he and Miss Debra Prager, who had been Promuto's secretary, searched all of their files and were unable to locate any Form 306s for Roman, the Rosarios, or Carolyn Baxter.

The third and final witness [1] to testify at the Brady hearing was Vincent Promuto, who is presently the head of Public Affairs for the Drug Enforcement Administration but who was, on June 14, 1973, a special prosecutor assigned to the New York Joint Task Force. Promuto testified that he, and not Pykett, had interviewed Domingo Rosario, Ignacia Rosario and Andres Roman. He stated that it was his usual practice to fill out a Form 306 for each defendant he interviewed. However, he did not usually fill out that part of page two of Form 306 which was the space designated for "Defendant's Statement". Promuto said that as a general practice he would not take a statement from defendants because "I felt like I spent half my time in court if I did testifying." Promuto had no recollection of being given a statement by Andres Roman, Domingo Rosario, Ignacia Rosario or Carolyn Baxter, nor did he have any idea of what could have happened to the Form 306s he had filled out.

On the basis of the testimony adduced at the hearing, I find that the interviewing attorney, Vincent Promuto, did not take any statements from any of the defendants and, therefore, the missing Form 306s which he completed could not contain any exculpatory material. I further find that the loss of the Form 306s was inadvertent and accidental and that the government has made a good faith effort to locate them. The motion to dismiss the indictment for failure to turn over exculpatory material is therefore denied.

Turning then from the Brady hearing to the trial itself, the prosecution introduced the testimony of six government agents and there was a stipulation as to a chemist's testimony. The defense did not call any witnesses.

The testimony and the exhibits established that on June 14, 1973, nine offi-

---

1. The parties apparently understood that Mr. Promuto was to be the last witness to testify at the Brady hearing. There was, however, a failure in communication for it was my understanding that the government wished to call one additional witness who was travelling somewhere in Asia. I postponed a decision on the motion, and conse-

quently a decision on the trial, until this witness returned from Asia. When quite some time passed and I was not informed of the return of this witness, I contacted the parties and was informed that neither side intended to call any further witnesses. This failure of communication resulted in the unfortunate delay in the filing of this opinion.

cers from the Task Force executed a federal search warrant with a no-knock clause at apartments 15–16 of 1980 Second Avenue in Manhattan. The officers made a forced entry at approximately 5:45 a.m. and coming in through the kitchen and walking through an adjoining living room, some of the agents turned into a bedroom. In this bedroom they found the defendant Andres Roman sleeping in bed with a small child.

On the night stand next to the bed in which Roman was sleeping the agents found and seized a tinfoil ball and a clear plastic bottle. The tinfoil ball contained approximately 3.6 grams of cocaine which was wrapped in six small tinfoil packets. The clear plastic bottle contained 13.2 grams of cocaine in seventeen tinfoil packets.

Elsewhere in this bedroom the agents found and seized, from a bureau drawer, 41 glassine envelopes in three different bundles; the contents of these envelopes were field tested as cocaine but later found to be heroin. Also in the bureau drawer was a gold metal key-shaped case which contained marijuana.

In the living room of the apartment the agents found and seized two tinfoil packets; two marijuana cigarettes; a jar of lactose; a small scale; a measuring spoon; a strainer; and four marquis reagents of the type generally used for field testing drugs. The kitchen refrigerator must have had a "chilling effect" on the six tinfoil packets of cocaine that were found therein. Like the refrigerator, the bathtub was also put to a somewhat unusual use—it was used for storing 700 small glassine envelopes of the type usually used for bagging narcotics for retail sales. Five methadone tablets were found in a bedroom other than the bedroom Roman had been sleeping in.

In addition to the narcotics and paraphernalia described above, some money was also seized from the apartment. A Nestle's Quick can taken from the bureau in the bedroom in which Andres Roman had been sleeping contained not "hot" chocolate but approximately $211. A black purse found in another bedroom contained $213.63.

During this search and seizure Andres Roman was placed under arrest. Michael Spataro of the New York City Police Department read him his rights; these were read from a card that Officer Spataro carried in his wallet. Officer Spataro asked the defendant, "Having these rights in mind, do you wish to talk to me without a lawyer?" Roman was then asked whose "stuff" it was that had just been seized and Roman answered that it belonged to him.

Prior to being taken out of the apartment, Andres Roman again stated that all of the "stuff" in the apartment was his. His common-law wife, Ignacia Rosario, was present when this statement was made and she stated, "Yes, that is right, all the stuff is his."

In addition to the physical evidence and the defendant's admission, the government offered the testimony of Don Sturn, an employee of the Department of Justice assigned to the New York Joint Task Force. Mr. Sturn stated that on June 7, 1973, seven days before the events which form the basis of this indictment, he was working in an undercover capacity and had a conversation with the defendant. During this conversation Roman told Sturn that he could supply him with "weight", a one-eighth kilo of heroin, because he had a "good connection." Roman and Sturn set a time and place for Sturn to pick up the one-eighth kilo but Sturn did not keep this appointment.

On the basis of the testimony introduced at trial, I find that the government has proven beyond a reasonable doubt that the defendant Andres Roman did, on June 14, 1973, unlawfully, intentionally and knowingly possess with intent to distribute Schedule I and II narcotic drug controlled substances in violation of 21 U.S.C. §§ 812, 841(a)(1) & 841(b)(1)(A).

A verdict of guilty is hereby directed. The defendant will be remanded the date

for surrender to be set by the Department of Justice not later than five (5) days from the date of this opinion. A pre-sentence report is requested. Sentence will take place on June , 1975.